DAVID A SOLIS and MARIA R. SOLIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solis v. Commissioner
Docket No. 4983-77.
United States Tax Court
T.C. Memo 1983-766; 1983 Tax Ct. Memo LEXIS 20; 47 T.C.M. (CCH) 726; T.C.M. (RIA) 83766; December 21, 1983. *20 Held: Respondent did not prove fraud by clear and convincing evidence. Richard C. Arroyo, for the petitioners. Thomas G. Norman, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Prior to the issuance of the statutory notice, petitioners agreed to understatements of taxable income for 1973 of $64,503.61 and for 1974 $91,194.51. These agreed understatements resulted in understatements of income tax in the amounts of $21,337.71 and $46,082.74 for the two years. The 1973 deficiency was paid in full an all but $3,000 of the 1974 deficiency was paid, this amount resulting from an error in calculation. Petitioners have conceded this additional deficiency. The statutory notice proposed (in addition to the $3,000 deficiency in 1974) additions to tax under section 6653(b) [1] against *21 petitioner David A. Solis only in the following amounts: 1973
$10,668.86
1974
23,041.37
It is the additions to tax for fraud, on which respondent has the burden of proof, [2] which are in dispute. For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and are found accordingly. At the time the petition was filed, petitioner Maria R. Solis was residing in Brownsville, Texas, and petitioner David A. Solis (Solis) was serving a sentence in the Texarkana Federal Prison in Texas. For the years 1973 and 1974, petitioners filed joint Federal income tax returns.
At the time of trial Solis was 67 years of age and apparently has lived in Brownsville, Texas, all of his life. He graduated from the Brownsville High School, started out in life as a carpenter, acquired a grocery store, then a produce business and has bought and sold real estate and automobiles.He also developed a substantial tax return preparer business in the community *22 handling simple tax returns. We find Solis notwithstanding to be a relatively unsophisticated and not well educated person who, for reasons which are not apparent, appears to prefer to avoid controversy with respondent about taxes and, with the exception of the fraud penalty in these years, has been willing to pay whatever additional tax respondent has asserted. It is stipulated that petitioners were audited for the years 1965 through 1970. Of the years 1965 and 1966, the deficiencies were under $2,000 each and for the year 1967 slightly over $3,000. Petitioners also conceded the fraud penalty for those years. For the years 1968 and 1969 the deficiencies were slightly more than $3,000 each, and for 1970 a deficiency of less than $200, all of which were conceded, along with the negligence penalty for 1968 and 1969. Their 1971 tax return was surveyed without audit. For 1972 the determined deficiency in income was too small to warrant a tax adjustment. Solis has not kept records of his business activities which would be deemed adequate by any reasonable standard and he has been notified by respondent on several occasions that his records are inadequate.However, we find no basis *23 on this record for concluding that the keeping of inadequate records has been deliberate with a view toward concealing income facts or hindering respondent's audits. Although respondent argues that the record of deficiencies in the period $1965 - 1974 (with the exception of 1971 and 1972) shows a consistent pattern of understatement of income in substantial amounts, we do not agree. Leaving aside the years 1973 and 1974, we do not find in this eight-year period such a consistent pattern as would constitute an indicia of fraud. We further conclude that the continued keeping of poor records reflects poor judgment, but there is no evidence reflecting any element of intent by Solis to conceal income through lack of records. We are, of course, aware that petitioners conceded the fraud penalty for the years 1965 - 1967 and the negligence penalty for the next two years, but the pattern, if there is one, is of improvement in tax compliance. During 1975 Solis was twice sentenced to prison upon guilty pleas, the first time for possession of marijuana with intent to distribute and the second time for distribution of opium (apparently to undercover narcotic agents). Petitioners' 1974 *24 income tax return was prepared by their son, David A. Solis, Jr., while Solis was in prison. His son also appears to have handled in whole or in part the audit of the 1973 and 1974 tax returns, as well as the filing of the pleadings in this case. In their reply, petitioners admit having derived taxable income in 1973 and 1974 from sale of narcotics. However, the stipulation recites the purchase and sale of "controlled substances" only in 1974. [3]
*25 At the time of his arrest on the marijuana charge, Solis had in his possession approximately $80,000 in cash, which was not confiscated but in substantial part returned to him. There is no particular significance to this fact since Solis has always dealt largely in cash and respondent's net worth statement disclosed that during the year 1973 Solis and $90,000 in certificates of deposit. We find, based on petitioners' concessions, that petitioners' income was understated in 1973 and 1974 in the amounts set forth in the net worth calculation attached to the statutory notice, but we have been given no explanation of sources of this unreported income.[4] We do not find on this record any basis for even a suspicion of drug trafficking or other illegal income in 1973. In 1974 there is at best merely a suspicion of drug sales, but no basis for a determination or even an estimate of the amount, if any, of income derived therefrom. *26 Respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. See Miller v. Commissioner,51 T.C. 915 (1969). The existence of fraud is a fact which must be determined on the basis of all the facts and circumstances before us. Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraud means "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941).Of more pertinence in the instant case, fraud is not to be imputed or presumed, Otsuki v. Commissioner,53 T.C. 96 (1969), and the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962); Otsuki v. Commissioner,supra;Vannam an v. Commissioner,54 T.C. 1011, 1018 (1970). Moreover, "the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion." Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950); *27 Olinger v. Commissioner,234 F.2d 823 (5th Cir. 1956); Green v. Commissioner,66 T.C. 538, 550 (1976). All that we have in this case is a concession of substantial understatement of income in each of the two years and the mere suspicion that Solis may have realized income from an illegal activity in 1974. We have at least a counter suspicion that no income was derived from that activity. In the interest of getting at the truth, it is unfortunate that the conflict between the stipulated facts and the testimony of Solis was not resolved. See footnote 3. The facts supporting respondent's burden of proof are the following: (i) A history of inadequate business records; (ii) an eight-year audit history which starts with concession of the fraud addition, then the negligence addition, then two years without asserted deficiencies; (iii) concession during audit of deficiencies based upon net worth calculations; (iv) illegal sales in 1974 but without evidence of any income from such sales; (v) the existence of income from illegal activity made improbable by the records of the criminal proceedings. The substantial deficiencies in the two years *28 before the Court and their acceptance by petitioners would normally have significance, but not under these circumstances. An understatement of income by itself does not prove tax fraud. Neither does the fact of unsuccessful attempts to deal in drugs. Civil fraud cannot be predicated upon an attempt to realize income, whether from a legal or an illegal act. We conclude that respondent's web is too fragile to meet the test of clear and convincing evidence. We find for petitioners on the issue of the additions to tax under section 6653(b).
An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Sec. 7454; Rule 142(b), Tax Court Rules of Practice and Procedure.↩
3. On direct examination, Solis admitted that in 1974 he had transported marijuana to Houston for sale but stated that he had been apprehended before any sale had been made, thus negating any unreported income from that source. Since this testimony appeared to be contrary to the stipulated facts, as well as to the reply, we requested clarification. After consultation with Solis, his counsel requested the Court to accept the facts as stipulated with respect to the purchase and sale in 1974 of controlled substances and to ignore or strike all of his contrary testimony, although Solis would not retract but stood by his testimony. Under these circumstances, we accepted the facts as stipulated, although with trepidation, for Solis appeared to the Court to be a forthright and credible witness. We attribute no significance to the reply, which should have been stricken. It was signed on behalf of Solis by his son (who is not admitted to practice), although apparently prepared by petitioners' counsel but without consultation with Solis. The marijuana criminal information is consistent with Solis' testimony that he made no sale. The opium indictment charges as overt acts various contacts with Federal agents. It is reasonable to infer that the sale, described in Count 2, was to a Federal agent, thus producing no income. Nowhere is there any evidence of other drug activity. Thus, the is there any evidence of other drug activity. Thus, the only evidence supporting the theory of income from drug activity is paragraph 11 of the stipulation, which refers only to "selling controlled substances." Sales do not, however, inevitably result in net income.↩
4. The audit took place while Solis was in prison and apparently was handled by his son under a power of attorney, but there is nothing to indicate that the son had any qualifications to act as a practitioner or to understand, let alone contest, the net worth determination. The circumstances cause us to wonder whether in fact the net worth determination is substantially correct.↩